**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

EDDY PENA,

    *Petitioner*,

    v.

UNITED STATES OF AMERICA,

    *Respondent*.

No. 3:22-cv-00802-MPS

**RULING ON MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE**

Eddy Pena has filed a motion under 28 U.S.C. 2255 to vacate his sentence for one count of conspiracy to distribute one kilogram or more of heroin (Count One) in violation of 21 U.S.C. Sec. 841(b)(1)(A) and two counts of possession with intent to distribute heroin (Counts Two and Three) in violation of 21 U.S.C. Sec. 841(b)(1)(C).  After Pena pled guilty to Counts Two and Three, he went to trial on Count One and a jury found him guilty on February 20, 2019.  I sentenced him to 179 months on Count One and 36 months each on Counts Two and Three, all to run concurrently.  His Section 2255 motion raises three grounds: (1) his defense lawyer rendered ineffective assistance in violation of the Sixth Amendment by "induc[ing]" him "without [his] consent" to plead guilty to Counts Two and Three while "recommend[ing] that he go to trial" on Count One, which carried a mandatory minimum term of imprisonment of ten years; (2) his defense lawyer rendered ineffective assistance by failing to contest the amount of drugs attributed to Pena in the conspiracy; and (3) his defense lawyer rendered ineffective assistance by "fail[ing] to contest the government's witnesses and trial evidence."  ECF No. 1 at 6-7.

I have reviewed the motion (ECF No. 1), the Government's response (ECF No. 5), and Pena's reply (ECF No. 8), as well as the judgment (Judgment, ECF No. 913, *Pena v. USA*, No. 3:17-cr-00263 (D. Conn.)), the Court of Appeals' summary order affirming the judgment (ECF

No. 991, *id.*), the transcript of the change of plea colloquy (ECF No. 1062, *id.*), the transcript of the *Frye* hearing (ECF No. 1099, *id.*), and other portions of the record.  After carefully considering these materials, I find that no evidentiary or other hearing is required in this case because "the motion and the files and records of the case conclusively show that [Pena] is entitled to no relief," 28 U.S.C. Sec. 2255(b), and DENY the motion in part for the reasons set forth in the Government's brief at pp. 6 - 12 and in part for the reasons set forth below.  Because the record makes clear that Pena is not entitled to relief and because much of the relevant procedural history, legal standards, and some of the reasoning I would recite are set forth in the Government's brief (*see* ECF No. 5), I will not set forth detailed findings of fact or conclusions of law except as set forth below.

## I.   FIRST GROUND

The transcripts of the change of plea colloquy and the *Frye* hearing, taken together, foreclose Pena's claim that his lawyer somehow coerced him, improperly "induced" him, or even misadvised him to plead guilty to Counts Two and Three and to proceed to trial on Count One.

### A.   *Frye* Hearing

At the *Frye* hearing, held on January 15, 2019, U.S. Magistrate Judge Donna F. Martinez conducted a thorough inquiry of the prosecutor, defense counsel, and Pena about the charges, the plea offer the Government had conveyed to Pena's counsel, and Pena's understanding of his choice between pleading guilty and proceeding to trial.  The hearing began with the prosecutor's recitation of the three counts of the operative indictment and the maximum and minimum penalties associated with each.  Pena indicated he understood those penalties, including the mandatory minimum of ten years applicable to Count One.  Transcript of *Frye* Hearing, ECF No. 1099 at 3-4, 8-10, *Pena v. USA*, No. 3:17-cr-00263 (D. Conn.).  In response to Judge Martinez's

questioning, Pena stated that he understood (1) that the purpose of the hearing was to make sure he understood "the terms of the plea bargain that the Government has offered" and the "consequences of choosing the plea bargain or turning it down," *id.* at 5-6; and (2) that he understood the role of the Sentencing Guidelines in federal sentencing and that if he accepted the plea bargain, "the sentence that's recommended under the guidelines might be lower than it would be if you were to go to trial and be found guilty," *id.* at 7.

Later in the hearing, the prosecutor summarized the evidence it intended to present if the case went to trial, including the evidence supporting the conspiracy charge in Count One. *Id.* at 12-14. The prosecutor's summary concluded: "So the long and short is the Government is very confident that it will be able to establish not only the possession with intent to distribute heroin charges . . . but . . . also . . . the conspiracy [alleged in Count One]," and commented that the Government had a "strong case" on all counts of the operative indictment. *Id.* at 14. The prosecutor noted that, if Pena was convicted at trial, the Guidelines range would likely be 210 to 262 months of imprisonment. *Id.* at 15. At sentencing, I determined the Guidelines range was 235 to 293 months in prison, adopting the probation officer's calculation in the presentence report, and imposed a non-Guidelines sentence well below that range of 179 months. Presentence Investigation Report, ECF No. 838 ¶¶ 69-70, *Pena v. USA*, No. 3:17-cr-00263 (D. Conn.).

As the *Frye* hearing continued, the prosecutor set forth the plea offer that he had conveyed to Pena's counsel: the Government would allow the defendant to plead guilty to a lesser included offense of Count One charging a conspiracy to distribute 100 grams or more of heroin in violation of 21 U.S.C. Sec. 841(b)(1)(B), which carries only a five-year mandatory minimum sentence, and would agree to a Guidelines range of 151 to 188 months but with a waiver of the right to appeal any sentence that did not exceed 188 months. Transcript of Frye

3

Hearing, ECF No. 1099 at 15-17, *Pena v. USA*, No. 3:17-cr-00263 (D. Conn.).  Pena told Judge

Martinez that he understood the Government's offer and understood that if he accepted it, he'd

be giving up his right to appeal the sentence as long as it did not exceed 188 months.  *Id.* at 18-

20.

     Defense counsel also spoke at the hearing, confirming that he had discussed the

Government's offer with his client.  He noted that it took "the greater part of a year" to negotiate

the proposed plea agreement and that he was "quite elated" when the prosecutor agreed to reduce

the (b)(1)(A) charge carrying a ten-year minimum to a (b)(1)(B) charge carrying a five-year

minimum and immediately went to see Pena to hand-deliver the proposed agreement and to

"express[] [his] excitement over the fact that we had negotiated this agreement."  *Id.* at 20.

Defense counsel added that Pena and his family were initially "also very excited" about the

Government's offer and counsel "was led to believe at that point that we had a deal" and

arranged to schedule a change-of-plea hearing.  *Id.* at 20-21. But later, when counsel returned to

see Pena to prepare for the change-of-plea hearing, Pena "made clear to me that he no longer

wanted to proceed with the change of plea."  *Id.* at 21.  Counsel added that he "did [his] best" to

respond to each objection Pena raised and advised him of the likely sentences he would receive if

accepted the offer and if he went to trial.  *Id.*  "Notwithstanding any of that," Pena confirmed to

him that he wanted to go to trial and did so again the day of the *Frye* hearing.  *Id.*  Counsel

added, in a passage that bears emphasis: "*I've made it clear to Mr. Pena, I endorse [the*

*Government's] offer.  It was my bargained request to obtain this offer. . .  I thought my client*

*was acceptable and amenable to this offer.  I believe this offer remains in his best interest.  But I*

*am his chosen advocate, and he has indicated to me he wishes to have a trial.*"  *Id.* at 22.  Pena

agreed with this version of events and confirmed that his lawyer was "correct in everything he

told [Judge Martinez] about what happened between the two of [them]." *Id.* at 22-23.  He also stated that he understood the differences between the options of going to trial and pleading guilty.  *Id.* at 23.

After Pena stated that he "[didn't] know" if he had questions he wanted to ask, Judge Martinez canvassed him again, eliciting further confirmation that his lawyer had answered all his questions to his satisfaction and again explained the options to him.  She then took a recess to give defense counsel and Pena additional time to consider the Government's offer.  After she reconvened court, defense counsel stated that Pena still wished to proceed to trial.  Judge Martinez then canvassed Pena further, confirming that he had had enough time to speak to his lawyer and that he had no more questions to ask his lawyer.  When, at the end, she asked "what is your decision?", he said, "I want to go to trial." *Id.* at 30.

### B.    Change-of-Plea Hearing

On February 4, 2019, I held a change-of-plea hearing at which Pena pled guilty, without a plea agreement, to Counts Two and Three of the operative indictment.  At the hearing, defense counsel explained that the tactic of admitting the possession with intent to distribute charges in Counts Two and Three while contesting Count One at trial was dictated by the fact that "the evidence is pretty overwhelming that" Pena possessed heroin on the two dates mentioned in Counts Two and Three and "he wishe[d] to accept responsibility" for this conduct. Transcript of Change-of-Plea Hearing, ECF No. 1062 at 4, *Pena v. USA*, No. 3:17-cr-00263 (D. Conn.).  And doing so was "part and parcel to our trial strategy," because "essentially our position is that Mr. Pena is responsible for a fraction of the alleged misconduct" charged and "[h]e wishes to accept responsibility for his portion and proceed to trial on the balance." *Id.*

As the hearing went on, there was discussion about exactly what form Pena's limited plea would take — and, specifically, whether it would also include a plea to a lesser charge in Count One. At the conclusion of this discussion, I took a recess to give defense counsel and Pena more time to discuss Pena's options. *Id.* at 10-11. When I reconvened court, defense counsel said that his client wanted to change his plea to Counts Two and Three only; Pena confirmed this. *Id.* at 11. Pena also confirmed, under oath, (1) that he understood that the decision whether or not to plead guilty was his decision and his alone, *id.* at 12-13, and (2) that he had had enough time to consider his options, that he was satisfied with the representation of his lawyer, and that he had discussed with his lawyer the advantages and disadvantages of pleading guilty to Counts Two and Three while proceeding to trial on Count One. *Id.* at 18-19. When Pena expressed some hesitation, however, I took a recess to give him and defense counsel more time to mull the options.

After the recess, I again reconvened court and again canvassed Pena. He confirmed, again under oath, that he believed it was in his interest to plead guilty to Counts Two and Three and proceed to trial on Count One, that he understood why it was in his interest, and that he understood the risks this course of action might involve. *Id.* at 21-22. Pena later confirmed that he understood his trial rights with respect to Counts Two and Three and, again, that he understood the consequences of pleading guilty to those counts while still going to trial on Count One. *Id.* at 28-31. He also stated that he understood there was no plea agreement, that no one had made any promises to him, and that he was voluntarily pleading guilty to Counts Two and Three because he believed he was guilty of the conduct alleged in those counts. *Id.* at 31-33. Pena also confirmed he understood the penalties associated with Counts Two and Three, as well as those associated with Count One, that he understood the role of the Sentencing Guidelines and

the Section 3553(a) factors in sentencing, that he understood the factfinding process at

sentencing, and that he understood that "there's a lot of uncertainty here." *Id.* at 39-43.

***

It is clear from the transcripts of these two hearings that Pena's claims that he was

coerced, induced, or even misadvised into pleading guilty to Counts Two and Three and going to

trial on Count One lack merit.  Pena's choices were vetted with him carefully by me and Judge

Martinez and by defense counsel, who stated on the record – with Pena's confirmation – that

counsel had advised Pena *against* going to trial at all.  In short, the record reflects that defense

counsel "g[a]ve [his] client the benefit of counsel's professional advice on this crucial decision

of whether to plead guilty," *Purdy v. United States*, 208 F.3d 41, 44 (2d Cir. 2000) (internal

quotation marks omitted), and that, by proceeding to trial on *any* counts, Pena chose to ignore

that advice.  The hearing transcripts likewise show that Pena knew "the terms of the plea offer"

and "the strengths and weaknesses of the case against him, as well as the alternative sentences to

which he will most likely be exposed." *Id.* at 45.  Pena confirmed, under oath, that the decision

to plead guilty to Counts Two and Three, as well as the decision to proceed to trial on Count

One, was his decision and his alone, and further confirmed that he had adequately discussed this

course of action with counsel and was satisfied with the advice he had received.  He also

confirmed, and I made a factual finding, that he was acting knowingly and voluntarily.

Transcript of Change-of-Plea Hearing, ECF No. 1062 at 52, *Pena v. USA*, No. 3:17-cr-00263 (D.

Conn.).  Under these circumstances, his claims that he was improperly "induced" into pleading

guilty to Counts Two and Three while proceeding to trial on Count One, that he "did not

consent" to this course of action, or that defense counsel gave incompetent advice in urging such

a course of action are frivolous.  Finally, for the reasons set forth in the Government's brief (*see*

7

ECF No. 5 at 8-9), given Pena's decision to proceed to trial at all – which, again, he acknowledged was his choice made against the advice of his counsel – counsel's strategy of admitting the conduct alleged in Counts Two and Three, while contesting the conspiracy charge with the large drug quantity and ten-year mandatory minimum, was a reasonable strategic choice and thus does not satisfy the first prong of the *Strickland* standard.

## II.    SECOND GROUND

Pena's second ground, which asserts that defense counsel was ineffective for failing to contest the amount of drugs attributed to him, is not supported by any facts.  Under "supporting facts" in his motion, Pena does not cite any errors of defense counsel but, rather, seems to contest the sufficiency of the trial evidence and the Guidelines offense level calculated by the Probation Office and the Court based in part on the evidence of drug quantities adduced at trial.  ECF No. 1 at 6.  As the Government notes (ECF No. 5 at 9), his claims concerning the sufficiency of the evidence and the Guidelines calculations are procedurally barred because they were not raised on appeal and Pena has failed to show cause for this procedural default, let alone prejudice.  In any event, as the Government also notes (*id.*), the claims that the drug quantities assessed by Probation and by me at sentencing were not supported by the evidence lack merit for the reasons discussed in my decision denying Pena's motion for acquittal.  *See* ECF No. 786 at 3, *Pena v. USA*, No. 3:17-cr-00263 (D. Conn.).   And, as the Government also notes, defense counsel contested the drug quantities both at trial and at sentencing (*see, e.g.,* ECF No. 936 at 7-8, *Pena v. USA*, No. 3:17-cr-00263 (D. Conn.)), and it is clear that his strategy was to establish that Pena was only responsible for the much lesser quantities attributable to Counts Two and Three.  This ground therefore fails.

## III.    THIRD GROUND

Pena's third ground – that defense counsel was ineffective for failing to "contest the government's witnesses and trial evidence" – fails as well for the reasons set forth at pp. 10-11 of the Government's brief.  I presided over the trial and observed defense counsel object to portions of the Government's evidence and vigorously cross-examine the Government's cooperating witness.  His performance was objectively reasonable under the circumstances.

## IV.    CONCLUSION

Pena's remaining arguments are either (1) so meritless as not to warrant discussion (such as his argument that counsel failed to investigate that other "similarly situated defendants" – none of whom went to trial and none of whom had quantity attributions that approached Pena's – received sentences below a mandatory minimum) or, as the Government notes, procedurally barred for failure to raise them on the direct appeal.  For all these reasons and those set forth in the Government's brief, I deny the motion to vacate, set aside, or correct sentence (2255) (ECF No. 1). The Clerk is directed to close this case.

IT IS SO ORDERED.


_____
                                                      /s/
                                              Michael P. Shea, U.S.D.J.


Dated:  Hartford, Connecticut
        June 7, 2023